# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JEFFREY A. PIERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:15-CV-00797 |
| v. ) | Judge Trauger / Knowles |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's "Motion for Judgment on the Pleadings," which the Court will construe as Plaintiff's "Motion for Judgment on the Administrative Record." Docket No. 13. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 15.

For the reasons stated below, the undersigned recommends that Plaintiff's "Motion for Judgment on the Administrative Record" be DENIED, and that the decision of the Commissioner be AFFIRMED.

1

# I. INTRODUCTION

Plaintiff filed his application for Disability Insurance Benefits ("DIB") on April 4, 2012, alleging that he had been disabled since November 17, 2011, due to migraines, dizziness, left sided numbness and weakness, claudication in legs, and blurred vision. *See, e.g.,* Docket No. 10, Attachment ("TR"), pp. 120, 134. Plaintiff's application was denied both initially (TR 58) and upon reconsideration (TR 56). Plaintiff subsequently requested (TR 69) and received (TR 28) a hearing. Plaintiff's hearing was conducted on January 17, 2014, by Administrative Law Judge ("ALJ") Renée S. Andrews-Turner. TR 28. Plaintiff and vocational expert ("VE"), Rebecca Williams, appeared and testified. *Id.*

On March 28, 2014, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 11. Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since November 17, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: left hemiparesis, headaches, obesity, and hypertension (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual

|   | functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasional pushing and pulling with left lower and upper extremities; occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no climbing ladders, ropes, or scaffolds; frequent handling and fingering; and he should avoid moderate exposure to hazards (dangerous machinery and unprotected heights). |
|---|---|
| 6. | The claimant is unable to perform any past relevant work (20 CFR 404.1565). |
| 7. | The claimant was born on October 17, 1961 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563). |
| 8. | The claimant has a limited education and is able to communicate in English (20 CFR 404.1564). |
| 9. | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)). |
| 11. | The claimant has not been under a disability, as defined in the Social Security Act, from November 17, 2011, through the date of this decision (20 CFR 404.1520(g)). |

TR 16–23.

On April 21, 2014, Plaintiff timely filed a request for review of the hearing decision. TR 8. On May 27, 2015, the Appeals Council issued a letter declining to review the case (TR 1),

thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

5

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[1] If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
>
> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*,

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ improperly rejected the March 29, 2012, Medical Source Statement ("MSS") opinion of Dr. Thomas Jaselskis, Plaintiff's treating physician, "without providing sufficient rationale, as required by the regulations." Docket No. 14 at 5. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

7

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. Weight Accorded to Opinion of Dr. Jaselskis, Plaintiff's Treating Physician**

Plaintiff argues that the ALJ improperly disregarded the March 29, 2012, MSS opinion of Dr. Thomas Jaselskis, his treating physician, wherein Dr. Jaselskis "endorses limitations consistent with a finding of disability." Docket No. 14 at 5, *referencing* TR 238–40. Plaintiff asserts that the ALJ's rejection of Dr. Jaselskis' opinion is "too cursory to survive scrutiny." *Id*. Specifically, Plaintiff contends that the ALJ rejected Dr. Jaselskis' opinion without considering the required factors, Dr. Jaselskis' own treatment notes, or the June 27, 2012, and July 23, 2012, consultative examinations of Dr. Roy Johnson. *Id*. at 6–7, *referencing* TR 241–45. Plaintiff maintains that in his consultative examinations, "Dr. Johnson notes decreased range of motion and tenderness of the lumbar spine, positive supine straight leg raise on the left side, and decreased range of motion of the left extremities." *Id*. Plaintiff further maintains that Dr. Johnson noted Plaintiff's limp and inability to squat or heel-to-toe walk. *Id*. at 7, *referencing* TR 241–45. Plaintiff asserts that "Dr. Johnson opined that Plaintiff is limited to lifting five pounds

8

and standing for one hour in an eight hour work day," which Plaintiff argues is consistent with Dr. Jaselskis' opinion that Plaintiff would be limited to standing one hour in an eight hour work day. *Id*., *citing* TR 238. Plaintiff concludes that "the ALJ should have better evaluated the medical opinion of Dr. Jaselskis," by either giving his opinion controlling weight or by giving good reasons for discounting it. *Id*. Plaintiff contends that the ALJ did neither, and therefore committed reversible error. *Id*.

Defendant responds that "the ALJ properly evaluated Dr. Jaselskis' opinion in accordance with the regulations." Docket No. 15 at 6, *referencing* TR 20, 238–40. Defendant argues that "Dr. Jaselskis' opinion would not be entitled to controlling weight," because he saw Plaintiff on only one occasion, which was the same day he rendered the MSS opinion at issue. *Id*., *referencing* TR 238–40, 261-62. Defendant further argues that the ALJ properly concluded that Dr. Jaselskis' opinion was "inconsistent with Plaintiff's treatment history and the objective evidence." *Id*. Specifically, Defendant notes that the MRI report Dr. Jaselskis used to support his opinion could not be correlated to Plaintiff's symptoms, "Plaintiff received minimal and conservative treatment for his allegedly disabling impairment," and Dr. Jaselskis' assessment was based on "Plaintiff's subjective allegations." *Id*., *referencing* TR 17, 19–21, 185, 237, 240, 262.

Defendant also contends that the ALJ "properly found Dr. Johnson's opinions entitled no weight," based on the fact that "Dr. Johnson did not review significant medical records and made inconsistent examination findings." *Id*. at 7, 8, *referencing* TR 20–21, 241–45. Defendant argues that Dr. Johnson failed to consider Plaintiff's alleged symptom magnification or frank malingering, minimal and conservative treatment, and the fact that the MRI did not correlate to

9

Plaintiff's subjective allegations. *Id*. at 7–8, *referencing* TR 17, 19–21, 185, 237, 241.

Defendant additionally maintains that Dr. Johnson found inconsistent results during, and rendered inconsistent opinions of, the two examinations he administered such that the ALJ could properly accord the opinions of Dr. Johnson no weight. *Id*., *referencing* TR 21, 242–44. Defendant additionally argues that the ALJ's decision is supported by the opinions of State agency medical consultants Dr. Susan Warner and Dr. William Downey, as well as by Plaintiff's treatment records and medication. *Id*. at 8–10, *referencing* TR 21, 247–55, 257.[2]

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with*

---

[2] Defendant also discusses the ALJ's residual functional capacity determination, credibility determination, hypothetical questions posed to the VE at Plaintiff's hearing, and ultimate determination that there existed in the national economy a significant number of jobs that Plaintiff could perform. Docket No. 15 at 3–11. Because Plaintiff does not raise these arguments in his Statement of Errors, the undersigned will not address them herein.

> *the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. . . .
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion . . . .
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
>
> . . .

20 CFR § 416.927(c) (emphasis added). *See also* 20 CFR § 404.1527(c).

The ALJ must articulate the reasons underlying her decision to give a medical opinion a specific amount of weight.[3] *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

---

[3] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. April 28, 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

The Sixth Circuit has held that, "[p]rovided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), *quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). If the ALJ rejects the opinion of a treating source, however, she is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 CFR § 404.1502.

The ALJ in the instant action discussed the medical opinion evidence as follows:

> T. Jaselskis, M.D., the claimant's treating physician, provided a medical source statement dated March 29, 2012 and reported that the claimant can lift up to 10 pounds occasionally and sit four hours, stand one hour, and walk one hour total in an eight-hour workday. Dr. Jaselskis indicated that the claimant's condition causes him severe pain and that the claimant will need to take frequent breaks, lie down, and elevate his legs in an eight-hour workday. (Exhibit 5F) *This opinion is inconsistent with the claimant's treatment history, essentially normal physical examinations findings, and negative imaging studies. Dr. Jaselskis's opinion appears to be based primarily on the claimant's subjective complaints and not on any objective medical findings.* Therefore, no weight is afforded to this opinion.
>
> On June 27, 2012 and July 23, 2012, Roy Johnson, M.D. completed consultative physical examinations of the claimant and opined that the claimant was able to lift only five pounds occasionally and could stand and walk for about one hour with normal breaks. Dr. Johnson reported that the claimant was using a cane, but noted that he did not have any difficulty getting on and

12

> off the examination table. Dr. Johnson is not a treating medical source and his opinion is based on a one-time examination, which is only a snapshot of the claimant's functioning at the time of the examination. *Dr. Johnson's opinion is inconsistent with the claimant's treatment history, essentially normal physical examinations findings, and negative imaging studies. Additionally, Dr. Johnson reported inconsistent physical examination findings that are only about three weeks apart.* He indicated on June 27, 2012 that the claimant's grip strength was 5/5 bilaterally, but stated on July 27, 2012 that the claimant's grip strength was 4/5 on the right and 3/5 on the left, which is a *significant difference from his first findings that were only about three weeks prior*. Therefore, no weight is given to this opinion. (Exhibits 6F and 7F)
>
> The State agency medical consultants who reviewed the evidence at the reconsideration level of adjudication determined that the claimant was capable of lifting 10 to 20 pounds and standing, walking and sitting for at least 6 hours in an 8-hour workday with additional pushing and pulling, postural, manipulative, and environmental limitations. (Exhibits 8F, 9F, and 11F) *These opinions appear to be well reasoned and consistent with the medical evidence of record. The State agency medical consultants provided specific reasons for their opinions about the claimant's residual functional capacity showing that these opinions were grounded in the evidence of record, including careful consideration of the objective medical evidence and the claimant's allegations regarding symptoms and limitations. These opinions are consistent with the claimant's treatment history, essentially normal physical examinations findings, and negative imaging studies*; therefore, the opinions are given great weight.

TR 20–21, *citing* TR 238–57, 274–75 (emphasis added).

As can be seen by the ALJ's explicitly articulated rationale, the ALJ did not reject Dr. Jaselskis' opinion without explanation. Rather, as demonstrated, the ALJ explained that she rejected Dr. Jaselskis' opinion because it was based on Plaintiff's subjective complaints, rather than objective medical findings; was inconsistent with Plaintiff's treatment history, essentially normal physical examinations, and negative imaging studies; and was inconsistent with the

13

opinions of the State agency medical consultants. The ALJ further explained that she rejected Dr. Johnson's opinions because they were inconsistent with each other, with Plaintiff's treatment history, with Plaintiff's essentially normal physical examinations, and with Plaintiff's negative imaging studies; and the ALJ properly explained her rationale for according great weight to the contrasting opinions of the State agency medical consultants.

As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 CFR § 416.927(d)(2); 20 CFR § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 CFR § 416.927(e)(2).

Because Dr. Jaselskis' opinion contradicts other substantial evidence in the record, including Plaintiff's "treatment history, essentially normal physical examinations findings, and negative imaging studies," as well as the opinions of the State agency medical consultants, as quoted above (TR 20–21, *referencing* 247–57, 274–75), the ALJ is not required to give Dr. Jaselskis' opinion controlling weight; Plaintiff's argument fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's "Motion for Judgment on the Administrative Record," be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14)

days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

                                                                              E. CLIFTON KNOWLES
                                                                              United States Magistrate Judge